UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALTANA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 04 C 4807 |
| | ) | |
| ABBOTT LABORATORIES, | ) | Judge Virginia M. Kendall |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Altana, Inc. ("Plaintiff") is a New York corporation in the business of producing and selling topical prescription lotions, creams, and ointments including erythromycin ophthalmic ointment. Erythromycin opthalmic ointment ("ointment") is a medical ointment applied prophylactically to prevent eye infections. Abbott Laboratories ("Defendant") is an Illinois corporation that manufactures Erythromycin, USP Base, Dihydrate ("base"), an ingredient in the production of Plaintiff's ointment.

Plaintiff entered into a contract with Defendant whereby Defendant provided a specified amount of base which Plaintiff then used in the production of ointment. The base provided to Plaintiff by Defendant under this contract proved to be defective, and all ointment produced with that base had to be destroyed. Plaintiff brings this action alleging state law claims of breach of contract and breach of express and implied warranties. Defendant admits liability, and "concedes that [Plaintiff] is entitled to recover the direct costs of making the products that were destroyed, the costs of destruction and disposal, and the additional costs incurred in effecting cover (i.e., overtime)." Still at issue is the question of whether Plaintiff is entitled to lost profits for the ointment that had to be destroyed. Plaintiff and Defendant have cross-moved for partial summary judgment on this

1

remaining issue. Because Plaintiff cannot prove any lost profits resulting from Defendant's breach of their contract, Defendant's motion for partial summary judgment is granted, and Plaintiff's motion for partial summary judgment is denied.

**Statement of Facts**

In 2002, Plaintiff, Altana, and Defendant, Abbott, entered into a contract whereby Plaintiff purchased fifty (50) kilograms of base from Defendant for a total sum of $7,500. *See* Defendant's 56.1 Statement of Fact ("Def.'s 56.1."), ¶ 6. Plaintiff purchased this base for use in the manufacture of ointment. *See* Def.'s 56.1., ¶ 7. After the base had been delivered to Plaintiff under the contract, Defendant discovered that it was defective. *See* Def.'s 56.1, ¶ 9. Because of this defect, Defendant voluntarily recalled the base under the advisement of the Food and Drug Administration. *See* Def.'s 56.1, ¶ 11; Plaintiff's 56.1 Response ("Plf.'s Resp."), ¶ 12. In response to this recall, Plaintiff destroyed all of the finished and work-in-process ointment that had been manufactured using the defective base. *See* Def.'s 56.1, ¶¶ 14, 15. Defendant does not dispute that Plaintiff was unable to sell the ointment that was made with the defective base and, therefore, was correct in destroying the ointment. *See* Plf.'s Resp., ¶ 14. Plaintiff returned all of the unused defective base to Defendant. *See* Def.'s 56.1, ¶ 13.

To replace the ointment that they had to destroy, Plaintiff manufactured additional units of ointment. *See* Def.'s 56.1, ¶ 17. Plaintiff produced this additional ointment to replenish its inventory, from which it satisfies contractual commitments. *See* Plf.'s Resp., ¶ 17. The process of manufacturing ointment is "a highly specialized and costly process . . . which cumulatively requires approximately 95 days to complete." *See* Plaintiff's 56.1 Statement of Fact ("Plf.'s 56.1"), ¶¶ 22-23. The manufacture of replacement ointment was done at cost to Plaintiff, and involved various adjustments to Plaintiff's manufacturing schedule. In order to produce this additional ointment

2

without falling behind in overall production, Plaintiff's employees on the ointment production line worked overtime. *See* Def.'s 56.1, ¶ 18. Plaintiff also transferred employees from other departments to the ointment production line to assist in the manufacture of the replacement ointment. *See* Def.'s 56.1, ¶ 20. These transferred employees then worked overtime to ensure that production within their departments would remain on schedule. *See* Def.'s 56.1, ¶ 21. Through this overtime work, Plaintiff was able to manufacture approximately the same amount of ointment as it had to destroy while maintaining its production levels in all other departments. *See* Def.'s 56.1, ¶ 28. Plaintiff sold this replacement product it manufactured at its normal profit. *See* Plf.'s Resp., ¶¶ 33, 36. During this time, Plaintiff's salespersons did not lessen their efforts to sell ointment due to Defendant's breach. *See* Plf.'s Resp., ¶ 68. Further, "[n]o customer or potential customer placed an order . . . which [Plaintiff] was unable to fill as a result of [Defendant's] breach and recall." Plf's. Resp., ¶ 39. Finally, Plaintiff never exhausted its inventory. *See* Plf.'s 56.1, ¶ 62.

**Standard of Review**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court, however, will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will

3

accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record, an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general trust of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the trust of the matter asserted.").

## DISCUSSION

Before reaching the substance of this dispute, the Court must determine which state's law to apply. A federal court sitting in diversity applies the choice-of-law rules of the state in which it sits to determine the applicable substantive law. *See Hinc v. Lime-O-Sol Co.*, 382 F.3d 716, 719 (7th Cir. 2004). Under Illinois choice-of-law rules, a determination of applicable law need be made only when the bodies of law at issue are in conflict with one another, and the parties express disagreement over which state's laws apply. *See Wood v. Mid-Valley Inc.*, 942 F.2d 425, 427 (7th Cir. 1991) (holding that "courts do not worry about conflict of laws unless the parties disagree on which state's law applies"). Both Plaintiff and Defendant recognize that UCC 2-715 governs this dispute, a provision that has been adopted into both Illinois and New York law. *See* 810 ILCS 5/2-715; 38 N.Y. UCC § 2-715. Since the parties have not identified a conflict between the two bodies of state law which might apply to their case, the law of the forum state – Illinois – governs the dispute. *See Massachusetts Bay Ins. Co. v. Vic Koenig Leasing, Inc.*, 136 F.3d 1116, 1120 (7th Cir. 1998); *Vantassell-Matin v. Nelson*, 741 F. Supp. 698, 703 (N.D. Ill. 1990) ("If all interested jurisdictions (including the forum state) apply the same legal rule to any issue, the court should apply to that issue the law with which it is most familiar–that of the forum").

Because Plaintiff was able to cover, or mitigate fully against any lost profit by producing the

4

replacement ointment, Plaintiff is entitled to its mitigation costs, but not lost profits. In addition, UCC 2-708, commonly known as the 'Lost Volume Seller' Doctrine, is not applicable because Plaintiff is not the seller under the parties' contract. *See Allsopp Sand & Gravel v. Lincoln Sand & Gravel*, 525 N.E.2d 1185, 1187 (Ill. App. Ct. 1988). For the foregoing reasons, Plaintiff is not entitled to damages for lost profits from the ointment that had to be destroyed.

**I. Recovery of Lost Profits**

A buyer that has suffered losses due to a seller's breach of contract may recover incidental and consequential damages. *See* UCC 2-715, codified at 810 ILCS 5/2-715. Section 2-715 defines consequential damages as "any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise." 810 ILCS 5/2-715(2)(a). Lost profits are an element of consequential damages. *See Burrus v. Itek Corp.*, 360 N.E.2d 1168, 1173 (Ill. App. Ct. 1977).

In determining Plaintiff's damages and deciding whether recovery of lost profits is appropriate, this Court must "determine that sum of money that will put the plaintiff in as good a position as he would have been in if both plaintiff and defendant had performed all of their promises under the contract." *Nilsson v. NBD Bank of Illinois*, 731 N.E.2d 774, 781 (Ill. App. Ct. 1999) (quoting Illinois Pattern Jury Instructions-Civil 700.13). Specifically, "[l]ost profits will be allowed as compensation for breach of contract where the following conditions are met: (1) the court is satisfied that the wrongful acts of defendant caused the loss; (2) at the time the contract was entered into, the profits were reasonably within the contemplation of the defaulting party; and (3) the lost profits can be proved with reasonable certainty." *F. E. Holmes & Son*, 435 N.E.2d at 728. Defendant admits that its acts caused Plaintiff some loss, but argues that Plaintiff mitigated that loss through its production of the replacement ointment. In terms of the disputed issue, Defendant

contends that its acts did not cause Plaintiff any lost profits.

Whenever a party is injured by a breach of contract, that party is obligated to mitigate its damages by all rational means. *See Pokora v. Warehouse Direct*, 751 N.E.2d 1204, 1213 (Ill. App. Ct. 2001). In situations where a breach of contract has left the non-breaching party with an unusable product, that party may either mitigate by procuring replacement product or, if unable to mitigate, suffer the lost profits and be compensated therefor. *See Plesniak v. Wiegand*, 335 N.E.2d 131, 138-139 (Ill. App. Ct. 1975) (stating that recovery of lost profits suffered by a truck rental business due to the incapacitation of a rental truck is an *alternative measure of damages* to the cost of renting a replacement truck (cost of cover)); *Kuwait Airways Corp. v. Ogden Allied Aviation Services*, 726 F. Supp. 1389, 1392 (E.D.N.Y. 1989) ("either obtain the use of a comparable [product] (and be paid for the expense of doing so) or [if unable to mitigate] accept the loss of use (and be compensated, equivalently, for that loss)").

Plaintiff successfully mitigated its damages by manufacturing replacement ointment to replace that which had to be destroyed because of the defective base. To begin, Plaintiff met all existing orders for ointment despite the breach. *See* Defendant's Exhibit D-5: Deposition Exhibit 5. Further, Plaintiff's sales department did not decrease efforts to sell ointment because of the breach. *See* Defendant's Exhibit C: Klaum Deposition, 38. Finally, Plaintiff was able to maintain its inventory of ointment through production of the replacement ointment, *see* Plf's 56.1, ¶ 62; ointment which, by the admission of Plaintiff's Chief Financial Officer, never would have been produced were it not for Defendant's breach.[1] *See* Defendant's Exhibit A: Dulik Deposition, 61-62.

---

[1] Plaintiff argues that it is entitled to lost profits because it eventually would have sold the replacement ointment in addition to the ointment that had to be destroyed. Plaintiff's argument ignores the fact that the replacement ointment never would have been produced but for the defective base in the original ointment. In this regard, Plaintiff essentially seeks to collect lost profits on two batches of ointments where only one would have been produced absent the breach. The law does not permit such relief since Plaintiff would be placed in a better position than if the contract had been

In the end, by producing and selling the replacement ointment, Plaintiff was able to realize the profits that it had expected to gain through sale of the ointment that had to be destroyed while maintaining its standard inventory and meeting all customer demand. *See Walters v. Marathon Oil Co.*, 642 F.2d 1098, 1099 (7th Cir. 1981) (recovery of lost profits permitted where the non-breaching party attempts to mitigate *but is unsuccessful in doing so*, and suffers lost profits as a result); *Canusa Corp. v. A & R Lobosco*, 986 F. Supp. 723, 732 (E.D.N.Y. 1997) (lost profits may be awarded when the non-breaching party is unable to achieve its expected profits during a rising market because it does not have sufficient product to satisfy demand).[2] Thus, due to its cover or mitigation, Plaintiff suffered no lost profits.

Last, because Defendant has agreed to pay any additional costs incurred as a result of producing the replacement ointment, Plaintiff is in as good a position as it would have been in had the contract been performed as agreed. *See Roboserve v. Kato Kagaku Co.*, 78 F.3d 266, 278 (7th Cir. 1996) ("The basic principle for the measurement of contract damages is that the injured party is entitled to recover an amount that will put him in as good a position as he would have been in had the contract been performed as agreed"). With regard to this last point, lost profits may be awarded when the non-breaching party is forced to manufacture replacement product through the use of manufacturing time that would have otherwise been spent profitably. *See Horizons v. Avco Corp.*,

---

performed. *See Ollivier v. Alden,* 634 N.E.2d 418, 422 (Ill. App. Ct. 1994) ("[I]t is fundamental that a monetary award should, to the extent possible, put the nonbreaching party in the position he would have been in had the contract been performed").

[2] A party may be entitled to lost profits when a contract breach leads to the use or loss of an ingredient in the manufacturing process (such as the base here) that itself represents a separate profit opportunity, but this did not occur in the instant case. *See Mississippi Chemical Corp. v. Dresser-Rand Co.*, 287 F.3d 359 (5th Cir. 2002) (allowing a fertilizer manufacturer to recover lost profits because the breach forced the use of ammonia (an ingredient in the fertilizer) that the manufacturer had in inventory, and the manufacturer was also in the business of selling ammonia separately). Plaintiff does not submit evidence that it is in the business of selling erythromycin base on the open market, rather the base is used solely as an ingredient in the manufacture of ointment. Therefore, the base does not represent a separate profit opportunity, and can not be the source for recovery of lost profits.

551 F. Supp. 771, 782 (D.S.D. 1982) (awarding damages where plaintiff suffered a net loss of production time as a result of defendant's breach); *Cole Energy Development Co. v. Ingersoll-Rand Co.*, 913 F.2d 1194, 1201 (7th Cir.1990) (plaintiff entitled to seek all incidental and consequential damages resulting from production delay caused by defendant's breach). While Plaintiff pulled workers from other production lines to complete manufacture of the replacement ointment, all work on those other production lines was completed as scheduled through the use of overtime. *See* Defendant's Exhibit A: Dulik Deposition, 40. Therefore, no manufacturing time was wasted due to the breach. Plaintiff was able to maintain its production schedule through the use of overtime and, since Defendant already has agreed to compensate it for these overtime costs, Plaintiff is in as good a position as it would have been if Defendant had performed under the contract. *See* 810 ILCS 5/1-106(1) ("The remedies provided by this Act shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed but neither consequential or special nor penal damages may be had except as specifically provided in this Act or by other rule of law").

### III. The 'Lost Volume Seller' Doctrine

The 'Lost Volume Seller' Doctrine, provided by UCC 2-708 and codified in Illinois law at 810 ILCS 5/2-708, is not applicable because the non-breaching party, Plaintiff, is not the seller in the contract at issue. This provision of law "contains the formula to compute a *seller's* damages caused by a *buyer's* nonacceptance or repudiation." *Allsopp Sand & Gravel v. Lincoln Sand & Gravel*, 525 N.E.2d 1185, 1187 (Ill. App. Ct. 1988) (emphasis added); *see also Canusa Corp. v. A & R Lobosco, Inc.*, 986 F. Supp. 723, 732 n.8 (E.D.N.Y. 1997) ("[Plaintiff] brought this action as a buyer-reseller not a seller, and, thus, cannot avail itself of a remedy under § 2-708"). Given that

Plaintiff is the buyer, not the seller, in its contract with Defendant, the 'Lost Volume Seller' Doctrine is inapposite.

## CONCLUSION AND ORDER

Plaintiff successfully mitigated its damages by manufacturing replacement product. It was able to replace the ointment that had to be discarded because of Defendant's breach without falling behind in the production of other products, without wasting manufacturing time that would have otherwise been profitably used, without foregoing additional customer orders and without reducing its inventory. Due to this diligence, Plaintiff did not suffer a loss of profits. Given Defendant's concession that it will pay Plaintiff's mitigation costs (i.e., the costs of making the ointment that was destroyed, the costs of destruction and disposal, and the additional costs incurred in effecting cover), Plaintiff will be in as good a position as if Defendant had performed. Reviewing all of the evidence in the record and drawing all reasonable inferences in favor of Plaintiff, there is no genuine issue as to any material fact that Plaintiff is not entitled to lost profits. Wherefore, Defendant's Motion for Partial Summary Judgment is granted, and Plaintiff's Motion for Partial Summary Judgment is denied.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: August 29, 2006