# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|   |   |   |
|---|---|---|
| ALTANA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 04 C 4807 |
| | ) | |
| ABBOTT LABORATORIES, | ) | Judge Virginia M. Kendall |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Altana, Inc. ("Altana") produces and sells topical prescription lotions, creams, and ointments including erythromycin ophthalmic ointment. Erythromycin opthalmic ointment ("the ointment") is a medical ointment applied prophylactically to prevent eye infections. Defendant Abbott Laboratories ("Abbott") manufactures Erythromycin, USP Base, Dihydrate ("base"), an ingredient used in the ointment. Abbott contracted to provide Altana a specified amount of base. The base Abbott provided to Altana was defective, and all ointment produced with that base had to be destroyed ("the destroyed ointment"). As a consequence, Altana was forced to incur additional costs in order to manufacture ointment to replace the destroyed ointment ("the replacement ointment").

Altana brought this action alleging state law claims of breach of contract and breach of express and implied warranties. Abbott admitted liability, and conceded "that Altana is entitled to recover the direct costs of making the products that were destroyed, the costs of destruction and disposal, and the additional costs incurred in effecting cover (i.e., overtime)." In fact, the parties stipulated that Altana was entitled to recover, as damages due to Abbott's breach, the costs Altana incurred twice due to the manufacture of replacement product: direct material costs of $388,346.58

and direct labor costs of $72,329.32. Abbott also stipulated to Altana's cost of effecting cover which included "premium" labor charges for overtime work in the amount of $17,814.04. Abbott also agreed to pay $9,793.20 to Altana to repay Altana for the cost of destroying the recalled product. Therefore, the parties stipulated to damages from this fifty-kilogram batch of base totaling $4888,283.13.

After the parties agreed to this amount of damages, they disputed whether Altana was entitled to recover lost profits and as such filed their first round of cross-motions for summary judgment. This Court held that "[b]ecause Plaintiff was able to cover, or mitigate fully against any lost profit by producing the replacement ointment, Plaintiff is entitled to its mitigation costs, but not lost profits." Remaining now in dispute is whether Altana is entitled to recover overhead costs and the parties have once again cross-moved for summary judgment as to whether Altana is entitled to recover those overhead costs associated with the destroyed ointment. Altana also moves this Court to reconsider its prior ruling on lost profits.

Because Altana has not shown that this Court misapprehended any fact or issue of law material to the question of lost profits, this Court will not reconsider its prior ruling. Nor is Altana entitled to recover its overhead costs. First, Altana has not proved that any of its overhead costs increased as a consequence of manufacturing the replacement ointment. Second, because Altana sold the replacement ointment as a substitute for the destroyed ointment, Altana did not receive less revenue to cover its overhead costs as a result of Abbott's breach.

**Statement of Material Facts**

Many of the facts material to Altana's claim for overhead costs were presented previously in the parties' cross-motions for summary judgment on lost profits; those facts are repeated here with

2

citations to the prior filings. In 2002, Altana, and Abbott, entered into a contract whereby Altana purchased fifty (50) kilograms of base from Abbott for a total sum of $7,500. Defendant's 56.1 Statement of Fact ("Def.'s 56.1."), ¶ 6. Altana purchased this base for use in the manufacture of ointment. Def.'s 56.1., ¶ 7. After the base had been delivered to Altana under the contract, Abbott discovered that it was defective. Def.'s 56.1, ¶ 9. Because of this defect, Abbott voluntarily recalled the base under the advisement of the Food and Drug Administration. Def.'s 56.1, ¶ 11; Plaintiff's 56.1 Response ("Plf.'s Resp."), ¶ 12. In response to this recall, Altana destroyed all of the finished and work-in-process ointment that had been manufactured using the defective base. Def.'s 56.1, ¶¶ 14, 15. Abbott does not dispute that Altana was unable to sell the ointment that was made with the defective base and, therefore, was correct in destroying the ointment. Plf.'s Resp., ¶ 14. Altana returned all of the unused, defective base to Abbott. Def.'s 56.1, ¶ 13.

To replace the ointment that it had to destroy, Altana manufactured additional units of ointment. Def.'s 56.1, ¶ 17. Altana produced this additional ointment to replenish its inventory which is maintains at a certain level in order to ensure that there is always product to satisfy its contractual commitments. Plf.'s Resp., ¶ 17. The process of manufacturing ointment is "a highly specialized and costly process . . . which cumulatively requires approximately 95 days to complete." Plaintiff's 56.1 Statement of Fact ("Plf.'s 56.1"), ¶¶ 22-23. The manufacture of replacement ointment was done at cost to Altana, and involved various adjustments to Altana's manufacturing schedule. In order to produce this additional ointment without falling behind in overall production, Altana's employees on the ointment production line worked overtime. Def.'s 56.1, ¶ 18. Altana also transferred employees from other departments to the ointment production line to assist in the manufacture of the replacement ointment. Def.'s 56.1, ¶ 20. These transferred employees then

3

worked overtime to ensure that production within their departments would remain on schedule. Def.'s 56.1, ¶ 21. Through this overtime work, Altana was able to manufacture approximately the same amount of ointment as it had to destroy while maintaining its production levels in all other departments. Def.'s 56.1, ¶ 28. Altana sold this replacement product it manufactured at its normal profit. Plf.'s Resp., ¶¶ 33, 36. During this time, Altana's salespersons did not lessen their efforts to sell ointment. Plf.'s Resp., ¶ 68. Further, "[n]o customer or potential customer placed an order . . . which Altana was unable to fill as a result of Abbott's breach and recall." Plf's. Resp., ¶ 39. Finally, Altana never exhausted its inventory. Plf.'s 56.1, ¶ 62.

The parties also have submitted additional facts regarding Altana's overhead costs. Altana calculates its overhead rates for certain projects or production units based upon its "overhead pool." Abbott's Local Rule 56.1 Statement of Undisputed Material Facts on Overhead ("Abbott's 56.1."), ¶ 46. The overhead pool is the sum of all budgeted costs for its manufacturing operations other than the direct material and labor costs. *Id.* Altana's overhead pool includes categories such as salaries and benefits, utilities, real estate taxes, depreciation, maintenance and repairs, insurance, security and postage. Abbott's 56.1, ¶ 47. Altana's overhead pool for 2003, the year at issue, was $19,518,590. Abbott's 56.1, ¶ 48. Altana allocated the total costs in its overhead pool to each product it manufactured on a unit-by-unit basis. Abbott's 56.1, ¶ 60. Atlana allocated $5.85008 to each finished one-gram unit of ointment and $0.201222 to each finished one-eighth ounce unit of ointment. Abbott's 56.1, ¶ 61. Adjusting for the fact that some units of the destroyed ointment were "work-in-progress" units, Altana allocated $207,142.91 of overhead costs to the destroyed ointment. Abbott's 56.1, ¶ 62.

I.      **Altana's Motion to Reconsider as to Lost Profits**

Altana asks this Court to reconsider its holding that Altana is not entitled to lost profits on the batch of ointment that it destroyed. "A motion for reconsideration performs a valuable function where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990); *Russell v. Delco Remy Div. of General Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995) (a motion to reconsider must rely on newly discovered material evidence or a manifest error of law or fact). Altana's Motion does not meet the standard for reconsideration. Altana presents its same arguments, and challenges only the Court's reasoning, not its apprehension. Motions to reconsider are not for use by parties who simply want to "rehash" the same arguments or are disgruntled with the result. *Caisse Nationale de Credit Agricole v. CBI Indus.*, 90 F.3d 1264, 1269-70 (7th Cir. 1996).

It is not material that Altana's sales increased from 2002 through 2004. This fact would be material only if Altana exhausted its inventory, missed a customer order or decreased its sales efforts due to Abbott's breach. Likewise, it is immaterial that Altana eventually would have been able to sell the destroyed ointment as well as the replacement ointment in light of the facts that Altana would not have produced the replacement ointment absent the breach and Altana was able to realize the profits that it had expected to gain through sale of the destroyed ointment by selling the replacement ointment. Altana still has not demonstrated any genuine dispute regarding the material facts that it met all customer orders for the ointment, its sales department did not decrease efforts to sell the ointment, it was able to maintain an inventory of the ointment and it would not have produced the replacement ointment were it not for Abbott's breach. Given these facts, Abbott is not liable to

5

Altana for any lost profits as a matter of law.

## II. Cross-Motions for Summary Judgment as to Overhead Costs

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court considers cross-motions for summary judgment from a "Janus-like" perspective, examining each party's motion in turn and viewing all evidence and drawing all inferences in favor of the party opposing the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court, however, will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record, an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general trust of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the trust of the matter asserted.").

Neither party disputes that Illinois law applies to Altana's claim for overhead costs. *See Wood v. Mid-Valley Inc.*, 942 F.2d 425, 427 (7th Cir. 1991) (holding that "courts do not worry about conflict of laws unless the parties disagree on which state's law applies"). In deciding whether Altana's recovery of overhead costs is appropriate, this Court's overarching goal is to "determine

6

that sum of money that will put the plaintiff in as good a position as he would have been in if both plaintiff and defendant had performed all of their promises under the contract." *Nilsson v. NBD Bank of Illinois*, 731 N.E.2d 774, 781 (Ill. App. Ct. 1999) (quoting Illinois Pattern Jury Instructions-Civil 700.13). A buyer that has suffered losses due to a seller's breach of contract may recover incidental and consequential damages. *See* UCC 2-715, codified at 810 ILCS 5/2-715. Section 2-715 defines consequential damages as "any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise." 810 ILCS 5/2-715(2)(a). Overhead costs may be a component of consequential damages. *See Central Information Financial Services, Ltd. v. First National Bank*, 471 N.E.2d 992, 998-99 (Ill. App. 1984).

The key Illinois cases discussing overhead costs involve the calculation of lost profits caused by a breach of contract. *See, e.g., SterlingFreight Lines, Inc. v. Prairie Material Sales, Inc.*, 674 N.E.2d 948, 951 (Ill. App. 1997); *Central Info.*, 471 N.E.2d at 998-99 (Ill. App. 1984); *F.E. Holmes & Son Constr. Co. v. Gualdoni Electric Service, Inc.*, 435 N.E.2d 724, 728 (Ill. App. 1982). Damages for lost profits are based on a plaintiff's expected net profit under the contract. When a plaintiff has not performed under a contract before the defendant breaches, the plaintiff's net profits are calculated by "subtracting the expenses necessary for plaintiff's full performance from the contract price because these expenses are generally avoided by the defendant's breach." *Holmes*, 435 N.E.2d at 728. A plaintiff's cost of performance includes "direct costs (labor and materials) and indirect costs (overhead)." *Id.* A plaintiff's direct costs are subtracted from the contract price because they are avoided as a result of the defendant's breach. *Id.* With regard to indirect costs, Illinois law treats differently fixed overhead and variable overhead. Fixed overhead costs are those

7

costs that "are the same whether or not the firm does anything; a good example is the fee that a state charges for a corporate charter." *Autotrol Corp. v. Continental Waters Sys. Corp.*, 918 F.2d 689, 692 (7th Cir. 1990). "Variable [overhead] costs are those that vary with the firm's activity – more precisely that are caused by fluctuations in that activity." *Id.* Fixed overhead costs are not actually caused by a defendant's breach. Nevertheless, the fixed overhead costs are not subtracted from the contract price because the breach will mean that the plaintiff "receives less revenue over which to spread its fixed costs unless it is enabled by the breach to obtain and perform similar work." *Central Info.*, 471 N.E.2d at 999; *see Autotrol*, 918 F.2d at 694 (a contract breach "convert[s] [fixed overhead costs] from a bookkeeping entry into a loss"); *Morley-Murphy Co. v. Zenith Electronics Corp.*, 142 F.3d 373, 381-82 (7th Cir. 1998) (the amount allocated to fixed costs "is not captured by any other theory of damages, and by definition none of the fixed costs could be avoided because of the breach"). In contrast to fixed costs, variable overhead costs are subtracted from the contract price because they are contingent on a plaintiff's performance and will have been avoided due to the defendant's breach. *Holmes*, 435 N.E.2d at 728.

The circumstances between Altana and Abbott vary from this precedent, but the principles apply the same. The first difference is that Abbott's breach was recognized after Altana had expended the costs needed to produce the destroyed ointment. For this reason, unlike an executory contract where the direct costs and variable overhead costs were avoided because of the breach, Altana would be entitled to damages for the increase in its overhead costs caused by manufacturing the replacement ointment. *See Autotrol*, 918 F.2d at 694. Altana, however, bears the burden of proving that some of its overhead costs, in fact, increased. *See Holmes*, 435 N.E.2d at 728 (overturning jury verdict on overhead damages where plaintiff did not establish which costs were

8

fixed and which costs were variable); *Central Info.*, 471 N.E.2d at 999 (outlining overhead proof analysis). Altana has not presented evidence showing that any of its overhead costs varied due to the manufacture of the replacement ointment. Abbott's 56.1, ¶ 59. Along these lines, Altana has provided no analysis dividing its overhead costs allocated to the destroyed ointment between fixed costs and variable costs. Abbott's 56.1, ¶ 69. Of course it is possible, even plausible, that Altana incurred certain increased overhead costs – perhaps, utility costs, maintenance and repairs or worker's compensation insurance – as a result of manufacturing the replacement ointment in addition to the destroyed ointment. But without evidence of such an increase, the jury could <u>speculate</u> that Altana incurred such increased costs, but a jury could not <u>reasonably infer</u> that Altana incurred them. *See Senner v. Northcentral Technical College*, 113 F.3d 750, 757 (7th Cir.1997) (distinguishing between a reasonable inference from mere speculation and holding that "[a] party needs more than a scintilla of evidence . . . to defeat summary judgment"); *Ouwenga v. Nu-Way Ag., Inc.*, 604 N.E.2d 1085, 1089 (Ill. App. Ct. 1992) ("basic contract theory requires that damages be proved with reasonable certainty and precludes damages based on conjecture or speculation"). Finally, it is irrelevant that Abbott never requested information regarding increased variable costs or a breakdown of the overhead costs into fixed and variable categories. *See* Altana's Resp., ¶¶ 59, 69. Altana bears the burden of proving its damages. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (plaintiffs must "make a showing sufficient to establish the existence of an essential element on which [the plaintiffs] will bear the burden of proof at trial, or else summary judgment for the opposing party is proper"); *NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 235 (7th Cir.1995) (defendant was under no duty to negate an element of plaintiff's claim, plaintiff bore burden of coming forward with evidence that would prove its claim).

9

What is more, Altana may not recover any damages based on its fixed overhead costs. Although fixed overhead expenses usually are recoverable for breach of contract, the rationale for this usual course (a loss of revenue to spread across fixed costs) also leads to its exception – no additional recovery is permitted when the breach already enabled the plaintiff to recover its fixed costs through either a substitute contract, performing additional work or cutting overhead expenses. *See Autotrol*, 918 F.2d at 694 ("If the plaintiff can either cut his overhead expenses or recover them in a substitute contract, then he indeed has not lost them as a result of the breach and they should not be figured in his damages"); *Central Info.*, 471 N.E.2d at 999 ("If other work is not obtained, the injured party is not made whole unless some portion of the damages awarded compensate it for the portion of overhead which should be allocated to that contract"). Altana recouped its lost revenue by manufacturing and selling a replacement, or substitute, batch of ointment. This replacement ointment never would have been manufactured absent Abbott's breach. *See Central Info.*, 471 N.E.2d at 999 ("Any expense saved by the breach should not be treated as overhead"). Through the production and sale of the replacement ointment, Altana received the same sales revenue to cover its costs that it would have generated from the destroyed ointment – that is, Altana was in as good a position as it would have been in if both sides had performed all of their promises under the contract.

**Conclusion and Order**

On the issue of lost profits, Altana has not demonstrated any clear error justifying reconsideration of this Court's previous opinion. As to overhead costs, Altana has presented insufficient evidence from which a reasonable jury could find that its overhead costs varied as a result of manufacturing the replacement ointment or that it suffered decreased revenue from which

to pay its overhead costs as a result of Abbott's breach. Wherefore, Defendant Abbott Laboratories' Motion for Summary Judgment on Altana's Claim for Overhead Damages is granted and Plaintiff Altana's Cross-Motion for Summary Judgment on the Issue of Overhead Costs and Motion to Reconsider Denial of Lost Profits is denied.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date:  September 7, 2007